[No. B015187. Second Dist., Div. Three. Dec. 31, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
GEORGE SAMUEL LUCEV, Defendant and Appellant.

**COUNSEL**

Dennis L. Cava, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Gary R. Hahn and Terry T. Fujimoto, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

KENNARD, J, *—Following a jury trial, defendant George Lucev appeals from a judgment sentencing him to life imprisonment without the possibility of parole for aiding and abetting the first degree murder of Walter Jelenic. The special circumstances underlying the sentence were that the murder was for financial gain (Pen. Code, § 190.2, subd. (a)(1)), and was committed while lying in wait (Pen. Code, § 190.2, subd. (a)(15)).

*Assigned by the Chairperson of the Judicial Council.

## FACTS

The nature of the contentions presented obviates the necessity for a summary of the facts surrounding the murder. Facts relevant to the issues will be set forth in our discussion below.

## CONTENTIONS

Lucev contends (1) the trial court's sua sponte substitution of defense counsel denied him the right to counsel, (2) his trial counsel was incompetent, and (3) the trial court's denial of his motion to suppress the testimony of Michael Pena was improper.

## DISCUSSION

### 1. *Substitution of Counsel*

Lucev contends the trial court denied him his right to counsel when, on its own motion, it relieved the public defender as trial counsel and appointed another attorney to represent defendant. The relevant facts are as follows:

On July 9, 1984, the trial court set the case for trial on October 22, 1984. The court specifically told defense counsel that it would grant a continuance only "under extraordinary circumstances," and that if counsel would not be ready for trial she should notify the court 60 days before the October 22 trial date so the court could appoint another lawyer to try the case.

On October 12, 1984, defense counsel filed a motion for a continuance. A hearing thereon was held on October 18, 1984, three days before the trial date. Defense counsel informed the trial court she needed a continuance to January 21, 1985, to prepare two motions relating to the special-circumstance allegations. The court asked counsel her reason for not giving 60 days notice, as ordered. Counsel replied she knew by mid-September 1984 of her inability to go to trial in October but did not notify the court thereof because she was working on other matters. When the court told counsel a delay to January 21, 1985 was "totally unacceptable," counsel said she also needed time for further investigation. In response to the court's inquiry as to the nature of the investigation, counsel said she could not comment on it, either in open court or in chambers.

Counsel mentioned she had discussed the matter with Lucev, who told her he did not want to be represented by another attorney. When the court asked Lucev to respond, the latter said, "I had Miss Cunningham for a year

and a half. Don't see it necessary to have another attorney." The court asked if there was "any way" the case could proceed to trial before January 21, 1985, the date sought by the defense, but counsel replied there was none.

The People objected to the 13-week continuance sought by the defense, pointing out that defense counsel could have filed any motions relating to the special circumstances well in advance of the October 22, 1984, trial date since the jury findings on the special circumstances involving codefendant Donna Jelenic "had been known for months. . . ." As to defense counsel's claim of involvement in other cases, the People observed that defense counsel's last trial was concluded on August 9, 1984. The People also argued the continuance motion was untimely.

After noting that Penal Code section 1050 required criminal matters to be "heard and determined at the earliest possible time," and entitled "both the People and the defendant . . . the right to an expeditious disposition," the trial court denied the defense motion for a 13-week continuance to January 21, 1985. Then, on its own motion, the court relieved counsel from further representing Lucev, based on the court's finding that counsel would be unable "to try the case in a timely manner," in effect rendering counsel "unavailable." As the court explained: " [I] think it would be totally inappropriate for this Court to demand and order that Miss Cunningham go to trial in this case on Monday [October 22, 1984, the date set for trial].

"Because to require a defendant who is facing the possibility of a death penalty to go to trial with counsel that is not prepared and will not be prepared—and it doesn't relate solely to the motions that have been filed, but it also relates to a need for investigation, a need which will not be set forth, apparently, by defense counsel to the Court—these are serious matters.

"And the Court feels it would be foolhardy in the extreme for me to force an attorney to go to trial . . . on a case of this severity where the attorney is indicating that extension for further investigation is needed that hasn't been done during these preceding 17 months that counsel has had the case, and that there are motions that have to be filed . . . two of which have been specified on the record, and, apparently, there may be other motions.

"The attorney presently assigned to represent the defendant has had the case since May of 1983.

"This is some 17 months later. In spite of all the efforts of the Court, the efforts of the Court to compel this matter to trial . . . have been totally unsuccessful.

"The Court set forth what was thought to be a reasonable procedure whereby it could be notified in advance as to whether there would be a need for a continuance, and that request or indication of the Court has been thwarted by defense counsel, apparently on the theory that her client is entitled to have her representation regardless of the Court's calendar, the matter of delay, the prejudice to the People . . . .

". . . I'm making the finding that this attorney Miss Cunningham, who represents the defendant, is never going to be prepared to try this case.

"[B]ased on the representations made by that counsel today in court, . . . the earliest possible trial date would be January 21, '85.

"As I pointed out, that means that the last 15 weeks are [*sic*] practically no progress at all, . . .

"Now we're down the road 15 weeks and we want to set it 13 weeks over to the future.

"So since the Court finds that defense counsel does not have the—will not be able to try the case in a timely fashion, and based on the Court's view of the matter will not be in a position to ever try this case—within the foreseeable future, the Court finds that counsel is unavailable and Miss Cunningham is relieved as counsel of record for Mr. Lucev."

■ The concept of due process, as it relates to the right of counsel, does not require that a defendant be allowed under all circumstances to be represented by a particular attorney. (*People* v. *Crovedi* (1966) 65 Cal.2d 199, 206 [53 Cal.Rptr. 284, 417 P.2d 868].) The reason is that other values of substantial importance, such as assurance of an orderly and speedy determination of criminal charges, must be considered. (*Ibid.; People* v. *Courts* (1985) 37 Cal.3d 784, 790 [210 Cal.Rptr. 193, 693 P.2d 778].) "The very development of Anglo-American procedures associated with the concept of due process exemplifies the accommodation of seemingly conflicting values within the context of enforcing the criminal law . . . ." (*People* v. *Crovedi, supra,* at p. 206.) Courts should seek an accommodation reasonable under the facts of the particular case. (*People* v. *Courts, supra,* at p. 790.)

Generally, either a defendant or his counsel initiates a request for the removal of counsel. ■ Counsel may also be relieved on a trial court's own motion, even over the objections of a defendant or his counsel, "to eliminate potential conflicts, ensure adequate representation, or prevent substantial impairment of court proceedings." (*People* v. *McKenzie* (1983) 34 Cal.3d 616, 629 [194 Cal.Rptr. 462, 668 P.2d 769].) Such discretion is,

however, severely limited. As the state Supreme Court said in *People* v. *Crovedi, supra,* 65 Cal.2d 199, 208, "the state should keep to a necessary minimum its interference with the individual's desire to defend himself in whatever manner he deems best, . . . and that . . . desire can constitutionally be forced to yield only when it will result in significant prejudice to the defendant himself or in a disruption of the orderly processes of justice unreasonable under the circumstances of the particular case." (See also *People* v. *McKenzie, supra,* 34 Cal.3d 616, 629-630; *People* v. *Shelley* (1984) 156 Cal.App.3d 521, 531 [202 Cal.Rptr. 874].)

 We recognize the competing interests in this case. On the one hand, we have defendant Lucev's interest and desire to continue to be represented by the public defender, who was appointed approximately one and one-half years before her involuntary removal in this case. On the other hand, there is the trial court's duty to expedite criminal trials "to the greatest degree that is consistent with the ends of justice." (Pen. Code, § 1050.) Under Penal Code section 1050, both the accused and the People "have the right to an expeditious disposition."

Here, the public defender's total disregard of the trial court's order to give sufficient notice of inability to proceed to trial as scheduled and her subsequent failure to give adequate reasons for seeking a 13-week continuance, other than saying she needed time to prepare motions and to conduct further investigation—with no assurances she would be ready to go to trial at the end of the 13-week period—constituted undue delay and " 'a disruption of the orderly processes of justice unreasonable under the circumstances of the particular case' " (*People* v. *McKenzie, supra,* 34 Cal.3d 616, 630), thus justifying the court in removing counsel and appointing another attorney to represent Lucev.

### 2. *Admission of Michael Pena's Testimony*

Michael Pena testified that in January 1983, when he was 17 years old, Lucev offered him $5,000 to kill Vladimir Walter Jelenic, the owner of a hardware store and the husband of codefendant Donna Jelenic (not a party to this appeal), with whom Lucev "had something going." Lucev expected to marry Donna and to manage the hardware store after the killing. He suggested that the killing be done at the Jelenic house upon Walter's arrival there from the hardware store. He then arranged a meeting between Donna and Pena, and told Donna to show Pena the inside of the house. She did so. After agreeing to do the killing, Pena returned to the Jelenic house on January 21, 1983. Donna gave Pena a pair of plastic gloves and a knife, and told him to kill her husband upon his entry through the front door. She then left, saying she would call Pena to let him know when to expect her husband.

She called at about 4 p.m., saying her husband would be home in 10 minutes. As the latter entered the house, Pena, who was behind the front door, stabbed him and then ran out of the house.

On March 30, 1983, Pena pleaded guilty to second degree murder under a plea bargain. The plea was conditioned on a requirement that Pena "testify truthfully." Failure to do so, the prosecutor told Pena, would be a breach of the bargain and could subject him to prosecution for first degree murder.

Citing *People* v. *Medina* (1974) 41 Cal.App.3d 438 [116 Cal.Rptr. 133], Lucev contends Pena's testimony should have been excluded because he was "obligated to testify truthfully [and] to give particular testimony." We disagree.

In *Medina,* three witnesses testified under a grant of immunity on the condition that they not materially change their testimony from their tape-recorded statements given earlier to the police. (*Id.,* at p. 450.) This court acknowledged in *Medina* that a grant of immunity may properly be conditioned on a requirement that the witnesses testify fully and fairly to the facts. But when, as occurred in *Medina,* the immunity agreement places the witnesses under a strong compulsion to testify in a certain way, the testimony is tainted and inadmissible. (*Ibid.)* Unlike the situation in *Medina,* in this case the plea bargain did not require Pena "to give particular testimony." It required only that he "testify truthfully." As the state Supreme Court said in *People* v. *Fields* (1983) 35 Cal.3d 329, 361 [197 Cal.Rptr. 803, 673 P.2d 680]: "[A]n agreement which requires only that the witness testify fully and truthfully is valid, and indeed such a requirement would seem necessary to prevent the witness from sabotaging the bargain."

### 3. *Competence of Counsel*

Lucev claims his trial counsel was incompetent for failing to offer any argument in support of his motion to strike the special-circumstance findings that the murder was committed for financial gain and while lying in wait. He contends counsel should have mentioned his "good past record" and "other positive things," which he does not identify.

Lucev has the burden of proving his trial counsel "failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates." (*People* v. *Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R. 4th 1].) He also must show that counsel's acts or omissions "resulted in the withdrawal of a potentially meritorious defense." (*Ibid.)* In *People* v. *Fosselman* (1983) 33 Cal.3d 572, 584 [189 Cal.Rptr. 855, 659 P.2d 1144] the state Supreme Court broadened the latter

test by allowing a defendant to obtain a reversal of a conviction "if he establishes that his counsel failed to perform with reasonable competence and that it is reasonably probable a determination more favorable to the defendant would have resulted in the absence of counsel's failings."

■ Penal Code section 1385 permits a trial court to strike or dismiss a finding of special circumstances so that a defendant can be eligible for parole. (*People* v. *Williams* (1981) 30 Cal.3d 470, 485, 490 [179 Cal.Rptr. 443, 637 P.2d 1029].) In considering such a motion, the trial court may properly consider "factors personal to the defendant, such as attributes of character and prior record." (*People* v. *Warren* (1986) 179 Cal.App.3d 676, 690 [224 Cal.Rptr. 746].)

■ Contrary to Lucev's contention, his attorney did present argument in support of the motion to strike the special-circumstance findings. Counsel argued that since the jury in codefendant Donna Jelenic's murder trial had found the lying-in-wait allegation to be untrue, the trial court in this case should have informed the jury thereof. As counsel said: "Had the jury been aware of that, my feelings are that they would not have found Mr. Lucev guilty of that particular special circumstance. And, of course, not finding that special circumstance to be true, there is no telling how they would have found the other special circumstance." The trial court denied the motion based on its conclusion that "overwhelming" evidence supported the special-circumstance findings.

Lucev has failed to establish the incompetence of his trial counsel. Even if we were to agree that counsel should have mentioned Lucev's "good past record," since, as the trial court also observed, overwhelming evidence supported the special-circumstance findings, it is not reasonably probable a determination more favorable to Lucev would have resulted in the absence of counsel's omission, and the error was therefore harmless. (*People* v. *Fosselman, supra,* 33 Cal.3d 572, 584; *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

## Disposition

The judgment of conviction is affirmed.

Danielson, Acting P. J., and Arabian, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 18, 1987.